UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DALLAS BUYERS CLUB, LLC,                          Civ. No. 3:15-cv-00176-AC

                               Plaintiff,          OPINION AND ORDER

         v.

PHILIP DOUGHTY,

                               Defendant.

_____

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Dallas Buyers Club, LLC, ("Dallas") brings this action pursuant to the Copyright

Act, 17 U.S.C. §§ 101 *et seq.* ("the Copyright Act"), against Philip Doughty ("Doughty")

alleging unlawful downloading and distribution of Dallas's copyrighted motion picture using

peer-to-peer file-sharing software referred to as BitTorrent. Dallas asserts three claims against

Doughty: direct copyright infringement, indirect copyright infringement, and vicarious copyright

infringement.[1]  Doughty now moves for summary judgment on all of Dallas's claims.  For the reasons stated below, Doughty's motion is granted in part and denied in part.[2]

*Preliminary Procedural Matters*

As a preliminary matter, the court addresses Doughty's evidentiary objections.  First, in Doughty's Reply in Support of Summary Judgment, Doughty objects to statements made by Robert Young ("Young"), Dallas's expert, about LimeWire.  Doughty argues Young is indisputably "an expert in uncovering files from computer and related devices," but he has not shown "he has any experience with peer-to-peer [] file sharing programs such as LimeWire." (Reply in Supp. of Summ. J. ("Reply"), at 6.)  Doughty points to the fact that the only support Young relies on for his statements about LimeWire is LimeWire's Wikipedia page, and Young "can hardly argue Wikipedia is a source an expert in the filed" would rely upon to form an opinion.  (Reply, at 6.)  Consequently, Doughty asks the court to disregard all of Young's statements pertaining to LimeWire.

A trial court can consider only admissible evidence in ruling on a motion for summary judgment.  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  For summary judgment purposes, a declaration is admissible if it is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the . . . declarant is competent to testify on the matters stated."  FED. R. CIV. P. 56(c)(4) (2015).  In ruling on a motion for

---

[1]Dallas does not expressly allege vicarious copyright infringement in its Complaint (ECF No. 1) or First Amended Complaint (ECF No. 13).  In his Motion for Summary Judgment, however, Doughty asks the court to dismiss Dallas's claim for vicarious copyright infringement. Dallas responds by arguing a material issue exists with regard to whether Doughty is vicariously liable for copyright infringement.  Because both parties address the issue as if Dallas formally pleaded vicarious copyright infringement, the court will address the claim.

[2]The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c)(1).

summary judgment, the court will consider the admissibility of the proffered evidence's contents, not its form. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

A witness qualified as an expert is permitted to testify if his testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702 (2015). For expert testimony to be admissible, it must be relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). The proponent of the expert testimony must establish its admissibility by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987). In determining the admissibility of expert testimony, the court has a "gatekeeping function" and must determine the expert testimony is based on scientific, technical, or other "specialized knowledge" in order for the testimony to be admissible. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). To make such a determination, the court should consider such factors as whether the scientific or technical theory or technique or specialized knowledge: (1) can be or has been tested; (2) has been subjected to peer review or publication; (3) is subject to generally applicable standards or known error rates; and (4) is "generally accepted" in the field of expertise. *Daubert*, 509 U.S. at 593-94.

Courts have deemed Wikipedia a generally unreliable source. *See, e.g., Badasa v. Mukasey*, 540 F.3d 909, 910 (8th Cir. 2008) (noting Wikipedia is not a sufficiently reliable source on which to rest judicial findings). Wikipedia is written by "'anonymous volunteers,'" and courts have no way of knowing who authored Wikipedia entries. *Nortek Air Solutions, LLC v. DMG Corp.*, No. 14-cv-02919-BLF, 2015 WL 6674705, at * 13 (N.D. Cal. Nov. 2, 2015) (citing http://en.wikipedia.org/wiki/Wikipedia:About). Hence, the court deems Young's statements to be highly unreliable, as the court is without any ability to determine the credentials of the individuals who authored the Wikipedia entry to which Young cites. Any probative value

Young's statements possess are therefore outweighed by its prejudicial effect. *See United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000) (stating the court should consider whether the expert's testimony's probative value is outweighed by any prejudicial effect, confusion of the issues, or undue consumption of time). Doughty's objection is sustained.

Last, Doughty objects to Dallas's attempt to use Doughty's installation of uTorrent on his cellphone as character evidence. Doughty argues Dallas is insinuating that, because he used uTorrent, he is allegedly a past infringer and thus is likely an infringer in this case. Doughty argues "[s]uch character evidence is inadmissible in civil cases." (Reply, at 4.)    Federal Rule of Evidence 404(a)(1) states that, in civil cases, character evidence "is not admissible to prove that on a particular occasion the person acted in accordance with the character trait." The court will therefore disregard any use of evidence by Dallas which attempts to insinuate Doughty's alleged past character traits tends to prove he is likely an infringer in this case. However, this does not preclude Dallas from arguing that the evidence in the record is inconsistent with Doughty's testimony and that Doughty's testimony should therefore be disbelieved. Doughty's objection is sustained.

## Background

On February 1, 2015, Dallas, which is the registered copyright holder of the Academy Award–winning film *Dallas Buyers Club*, filed a complaint against a Doe defendant identified only by the defendant's Internet Protocol ("IP") address. (Compl. (ECF No. 1.) ¶¶ 5-6.) Dallas alleged its motion picture was pirated using the aforementioned IP address on December 29, 2014. (Compl. ¶ 11.) On February 1, 2015, Dallas filed a motion to expedite discovery in which Dallas asked the court to allow it to subpoena the Doe defendant's Internet Service Provider, Comcast, for information identifying the subscriber of the IP address. (Mot. to Expedite Disc.

(ECF No. 2.), at 2.)  This court granted Dallas's motion.  (Order Granting Mot. to Expedite Disc. (ECF No. 6.).)  Comcast complied with the subpoena, and Dallas identified Doughty as the IP address subscriber.  (First Am. Compl. (ECF No. 13.) ¶¶ 12-13.)  Three months later, Dallas filed a First Amended Complaint naming Doughty as the defendant.  (First Am. Compl.)

Dallas twice deposed Doughty, first on May 14, 2015, and again on Dec. 3, 2015. (Doughty Decl. Ex. A (ECF No. 31.), at 1; Crowell Decl. Ex. 1 (ECF No. 35.), at 1.)    In his depositions, Doughty denied being the perpetrator of the infringing activity and stated that he did not know who the infringer might be but that the infringer "could be any of [his] roommates," as all roommates had Internet access through the same IP address.  (Doughty Dep. 24:15-20, 5:22-6:10, May 14, 2015 ("First Doughty Dep."); Doughty Dep. 13:11-23, Dec. 3, 2015 ("Second Doughty Dep.").)  Indeed, while Doughty was the account holder, all house members paid for and enjoyed Internet access through Doughty's account.  (Second Doughty Dep. 99:22-100:1, 13:11-23.)  According to Doughty, the house members agreed all would share monthly Internet service payments and Doughty would collect payments from the house members and pay Comcast in his name with the proceeds.  (Second Doughty Dep. 100:2-5.)  However, only Doughty had the authority to cancel the Comcast service or add members to the account, (Second Doughty Dep. 100:6-24.), and he could have terminated the Comcast service at any time. (Second Doughty Dep. 100:15:17.)  Doughty stated that the Comcast account was in his name "because [he] had been a resident of the property before the other residents," but he received no financial benefit from having the account in his name.  (Doughty Decl. ¶¶ 15-16.)

Moreover, Doughty indicated he used and provided wireless Internet access.  (First Doughty Dep. 5:18-21).  Wireless Internet access allows multiple users to wirelessly and simultaneously connect to the Internet through multiple devices via the same IP address.  *See,*

*e.g., In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 84 (E.D.N.Y. 2012) (stating a wireless router allows multiple computers to access the Internet at the same time under the same IP address). It appears that Doughty's housemates, as well as guests, connected to the Internet using the wireless router. (First Doughty Dep: 5:14-21; Second Doughty Dep. 102:17-22.)[3] Accordingly, Doughty asserted, the perpetrator "could be anyone who has come over to our house and spent time at our house" and connected to the Internet wirelessly, a potentially vast amount of people, since he and his roommates frequently had people over to watch movies, play games, have dinner, and participate in dance parties. (First Doughty Dep. 5:22-6:10; Second Doughty Dep. 15:15-22.)    In fact, according to Doughty's deposition testimony, he and his roommates had weekly dance parties in 2014, where friends and guests were invited to dance and listen to music. (Second Doughty Dep. 16:18-22.)    Doughty additionally testified that the house parties were relatively popular and well known; that he and his roommates even advertised the house and, occasionally, events on social media; and that they had their events DJ'd on a number of instances. (Second Doughty Dep. 16:2-22, 18:6-9, 49:21-23, 53:13-55:25.)  Hence, Doughty opines, the perpetrator "could be anyone" with access to the Internet through his wireless router. (First Doughty Dep. 5:22-6:10.)

Beginning in 2014, Comcast e-mailed Doughty numerous times informing him of potential copyright infringement. (Doughty Decl. ¶ 11; Second Doughty Dep. 103:2-6.)  That year, Doughty received multiple e-mails from Comcast notifying him his IP address was associated with alleged infringement of copyrighted works, and that continued infringement may result in suspension of Internet service. (Doughty Decl. ¶ 11.)  Dallas states Doughty personally acknowledged receiving up to nineteen e-mails. (First Am. Compl. ¶ 18.)  Doughty never spoke

---

[3]There is nothing in the record affirmatively suggesting Doughty did or did not require a password to access the Internet wirelessly during the relevant times at issue in this case.

to his roommates about any of the e-mails or took any action to prevent further infringing. (First Doughty Dep. 17:20-22, 18:16-25.)

While Doughty acknowledges receipt of these e-mails, he maintains he paid very little attention to the Comcast e-mail account to which they were sent and thus did not pay close attention to the e-mails' content. (First Doughty Dep. 17:20-25.) As Doughty explained, he did not even read the e-mails' headlines; instead, he would simply "go in[,] . . . 'select all,' . . . click 'mark as read,' and close it out," as he had no use for the e-mail account and most of the e-mails he received were "promotional and unsolicited." (First Doughty Dep. 18:5-10, 11-16; Doughty Decl. ¶ 11.) Moreover, despite acknowledging he received multiple Comcast e-mails informing him his IP address had been used to download other copyrighted works, Doughty alleges he never received a Comcast e-mail specifically advising him his IP address had been used to download *Dallas Buyers Club.* (First Doughty Dep. 16:11-16.) Dallas does not appear to dispute this assertion but argues Doughty would have received a notification on his cellphone each time Comcast sent him an e-mail and, thus, he was on notice of potential copyright infringement more generally. (Resp. in Opp'n. to Doughty's Mot. for Summ. J. ("Resp."), at 7.)

Beyond the e-mails, Dallas points to evidence extracted from Doughty's laptop as evidence Doughty is the infringer. (Resp., at 5-6.) Specifically, Dallas directs the court to Young's examination of Doughty's laptop's hard drive, which recovered a folder belonging to the user "phildoughty" used to store and share downloaded files. (Young Decl. ¶ 4.) According to Young, the folder is no longer available and appears to have been deleted sometime before the computer was provided for examination. (Young Decl. ¶ 6.) Young believes "it is highly likely that [the account folders] were securely deleted [prior to examination] and any additional information about the activities of that account . . . may be unrecoverable." (Young Decl. ¶ 7.)

Thus, Dallas contends, there is evidence Doughty: (1) used a folder to store and share downloaded files; (2) downloaded files to use and share, and potentially did so without authorization from the copyright holder; and (3) intentionally deleted this folder in anticipation of inspection and potential litigation. (Resp., at 5-6, 13.)

In responding to Dallas's accusation, Doughty states that he never wiped his hard drive or intentionally deleted any contents on his laptop in an effort to make them unrecoverable. (Second Doughty Dep. 86:4-9.) Doughty did indicate, however, that he "made use of BackBlaze online backup software," as well as other software, some purchased from Apple Inc. ("Apple"), which was used to restore his laptop in January 2015, and that these programs "may have resulted in loss of data not subject to backup." (Doughty's Resp. to Interrog. No. 4.)

Furthermore, Doughty testified, he did not use his laptop to exchange and transfer movies or download copyrighted content without a license.    (Second Doughty Dep. 86:10-12.) Likewise, Doughty asserts, he never used his laptop for BitTorrent nor did he know what BitTorrent was. (Second Doughty Dep. 86:7-9, 87:12-22; First Doughty Dep. 19:1-8, 23:11-14, 24:15-20.) Doughty did acknowledge, however, that he never asked his roommates whether any of them used, or had used, BitTorrent, and he did concede he never precluded anyone from accessing BitTorrent through his IP address. (First Doughty Dep. 6:14-16, 18:19-25, 23:11-14.) Doughty pointed out that he did inform his roommates they were "being looked at for downloading so do not download anything." (First Doughty Dep. 19:1-8.)

In addition to his laptop, Dallas argues Doughty's old cellphone provides evidence he was aware of and used a BitTorrent client. (Resp., at 3.) Dallas also asserts that Doughty's old cellphone, like the file on his laptop, was disposed of during litigation. (Resp., at 13.) Dallas

argues this is further evidence Doughty destroyed or disposed of material evidence in anticipation of litigation. (Resp., at 13.)

In June 2015, while the current litigation was ongoing, Doughty upgraded cellphones. (Second Doughty Dep. 79:19-80:12.) Upon upgrading, Doughty disposed of his old cellphone, apparently through an exchange, whereby he exchanged his old cellphone for his current cellphone. (Gill Decl. Ex. 1-2.) Doughty acknowledges his old cellphone contained peer-to-peer file-sharing software. (Second Doughty Dep. 80:13-16.) According to Doughty, a friend installed uTorrent, a BitTorrent client, on his Samsung Note 3 when the two were together in 2014, "in an attempt to download [the] open source program WinAmp." (Doughty's Resp. to Interrog. No. 3.) Doughty maintains, however, that the download attempt was unsuccessful and "the uTorrent program was never used for peer-to-peer file transfers." (Doughty's Resp. to Interrog. No. 3.)

Dallas believes this evidence not only contradicts Doughty's deposition testimony that he is "unfamiliar with BitTorrent" but proves Doughty disposed of material evidence cognizant of its relevance to ongoing litigation. (Resp., at 13-14.) Doughty counters by directing the court to a number of facts. First, he points out, possession of uTorrent is not wrongful and is not evidence he downloaded the copyrighted material at issue in this case, *Dallas Buyers Club*. (Reply, at 3.) Second, Doughty states that he did not destroy or dispose of evidence in anticipation of litigation. (Reply., at 5.) While he acknowledges disposing of his old cellphone, Doughty maintains that Dallas had not yet produced discovery requests for the cellphone and, thus, it was "reasonable to assume only the laptop was subject to litigation hold." (Reply., at 5.) Finally, Doughty proclaims, he lawfully viewed *Dallas Buyers Club* through his HBO Go subscription, which allows users to legally view copyrighted works, including feature-length

movies. (Doughty Decl. ¶¶ 5, 9.) Thus, he insists, he had no reason to pirate the film and "never illegally downloaded *Dallas Buyers Club* or any movie and [he] does not know who did." (Mot. for Summ. J. ("Mot."), at 20-21; First Doughty Dep. 24:15-20.)

*Standards*

Summary judgment is appropriate only when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2) (2015). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome of the case. *Id.* at 248. The moving party bears the initial burden of showing "the absence of a genuine issue concerning any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970). The moving party satisfies its burden by offering the district court the portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court does "not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999).

Once the moving party meets its initial burden, the nonmoving party must establish the existence of a genuine issue of material fact. FED. R. CIV. P. 56(e). To meet this burden, the nonmoving party must make an adequate showing as to each element of the claim for which it will bear the burden of proof at trial. *Celotex*, 422 U.S. at 322-23. The nonmoving party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968). In order to establish that there is a genuine issue of material fact, the

nonmoving party "need only present evidence from which a jury might return a verdict in [the nonmoving party's] favor." *Anderson*, 477 U.S. at 257. The evidence set forth must be sufficient to allow a rational jury to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A "mere scintilla of evidence in support of the [nonmoving party's] position [is] insufficient." *Anderson*, 477 U.S. at 252. Additionally, the court must view the evidence in the light most favorable to the nonmoving party, and must draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982).

*Discussion*

I. Dallas's First Claim – Direct Infringement

In its first claim, Dallas alleges Doughty directly infringed its copyright by personally copying and distributing *Dallas Buyers Club* through a BitTorrent network and doing so without Dallas's consent. Doughty moves for summary judgment, arguing Dallas failed to produce evidence which tends to show Doughty was the perpetrator of the infringing activity and not someone else having access to the allegedly infringing IP address. For the reasons discussed below, an issue of material fact exists, and Doughty's motion is denied with respect to Dallas's first claim.

To show direct copyright infringement, the plaintiff "must show that he owns the copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). To show the defendant himself violated the plaintiff's exclusive rights and not someone else, the plaintiff must provide more than the mere fact that the IP address associated with the infringing activity is registered to the plaintiff. *See, e.g., AF Holdings LLC v. Rogers*, No. 12-cv-1519-BTM-BLM,

2013 WL 358292, at *2 (S.D. Cal. Jan. 29, 2013).    Indeed, "just because an IP address is registered to an individual does not mean that he or she is guilty of infringement when that IP address is used to commit infringing activity." *Id.*  In fact, the increased popularity of wireless routers makes it "even more doubtful that the identity of the subscriber to an IP address correlates to the identity of the infringer who used the address . . . 'different family members, or even visitors, could have performed the alleged downloads." *Id.* (citing *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 84 (E.D.N.Y 2012).    Thus, a plaintiff must provide more than "an allegation that an IP address is registered to an individual." *Id.* at *3.    By itself, such an allegation "is not sufficient . . . to support a claim that the individual is guilty of infringement." *Id.*

There is no dispute Dallas owns the copyright at issue in this case.    The only dispute is whether Doughty violated Dallas's exclusive rights.    In his motion for summary judgment, Doughty points the court to his deposition testimony showing he never illegally downloaded *Dallas Buyers Club* or any movie, he was unaware who did, and he is entirely unfamiliar with BitTorrent. To rebut this testimony and to support its allegation that Doughty is the infringer, Dallas initially points to two sets of facts. First, Dallas points to the fact Doughty is the subscriber of the IP address used to download and/or to distribute *Dallas Buyers Club*.  Second, Dallas points to the e-mails Comcast sent notifying Doughty of infringing activity.    Dallas asserts that these e-mails put Doughty on notice of possible copyright-infringement litigation.

As stated in *AF Holdings*, simply because the IP address at issue in this case is registered to Doughty does not mean that he is guilty of infringement. Such evidence, by itself, is insufficient to get past summary judgment.  Similarly, the Comcast e-mails prove nothing more than Doughty is the subscriber of the IP address and that his IP address was identified as being

used to download and/or distribute copyrighted material. In fact, the e-mails nowhere state Doughty engaged in the infringing activity, only that his IP address was the source of the infringement. This is not enough to create a disputable fact. As the court in *AF Holdings* stated, the allegation that an IP address is registered to an individual is, alone, insufficient to support a claim that the Internet subscriber is guilty of infringement.

Dallas counters, however, by pointing to two additional pieces of evidence, arguing that this evidence allows a reasonable factfinder to conclude Doughty directly infringed Dallas's copyright. First, Dallas notes that Young determined Doughty deleted a file on his laptop potentially used to store and share downloaded files. Dallas argues that this evidence shows Doughty spoliated material evidence on his computer in anticipation of litigation, precluding summary judgment. Second, Dallas directs the court to Doughty's old cellphone, which had uTorrent software installed and was disposed of during litigation. Once again, Dallas argues this evidence shows Doughty spoliated material evidence in anticipation of litigation, precluding summary judgment.

*A. Destruction or Disposal of Evidence on Doughty's Computer*

The court finds Dallas's first argument unpersuasive, as there is no evidence Doughty spoliated evidence on his laptop prior to being on notice of Dallas's lawsuit. "'The failure to preserve electronic or other records, once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences.'" *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011) (quoting *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 100 (D. Md. 2003)). "[T]he obligation to preserve evidence arises prior to the filing of a complaint where a party is on notice that litigation is likely to be commenced." *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991). A party's failure to

preserve evidence constitutes "willful spoliation if the party has 'some notice that the documents were *potentially* relevant to the litigation before they were destroyed.'" *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)) (italics in original).

"A party's destruction of evidence need not be in 'bad faith' to warrant a court's imposition of sanctions" for spoliation if the court finds the party had notice the destroyed evidence might be relevant to the litigation. *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006). "However, destruction of documents which would have been relevant in later litigation is not wrongful unless that litigation was reasonably foreseeable at the time of destruction." *Hynix Semiconductor Inc. v. Rambus Inc.*, 897 F. Supp. 2d 939, 975 (N.D. Cal. 2012). The "obligation to preserve relevant evidence exists whether or not the evidence has been specifically requested in a demand for discovery." *Scalera v. Electrograph Systems, Inc.*, 262 F.R.D. 162, 171 (E.D.N.Y. 2009). "In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Apple Inc. v. Samsung Electronics Co., Ltd.*, 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012).

There is no evidence Doughty engaged in any destruction of evidence on his laptop prior to being on notice of Dallas's lawsuit. Dallas filed its First Amended Complaint, which officially named Doughty as the defendant, on May 25, 2015, and Doughty was officially served on June 4, 2015. (*See* ECF Nos. 13 & 15.) Dallas does not indicate when it believes Doughty allegedly deleted the folder used to store and share downloaded files on his computer. Indeed, the only evidence in the record comes from Doughty, who states he used BackBlaze and Apple software to restore his laptop in January 2015 and this may have resulted in a loss of data not

subject to backup. Doughty, however, was not on notice in January 2015 that any documents on his computer may be relevant to Dallas's lawsuit; Dallas did not even file its original Complaint naming a Doe defendant until February 2015. Consequently, even assuming Doughty did destroy evidence on his laptop, there is no indication, and Dallas has provided none, that Doughty was on notice that litigation against him was likely to commence when he allegedly destroyed the evidence on his laptop that could be relevant to this litigation. While Dallas may argue the Comcast e-mails Doughty received in 2014 should have put him on notice of potential copyright-infringement litigation, the e-mails provide no indication litigation was imminent; in fact, they made no mention of litigation at all. Moreover, there is no indication in the record Doughty received an e-mail pertaining to the specific copyrighted work at issue in this case, *Dallas Buyers Club*. Thus, Doughty had no notice litigation was likely to be commenced; he therefore had no duty to protect potential evidence contained on his laptop.

    *B. Destruction or Disposal of Dougthy's Cellphone*

    In contrast to Dallas's argument that Doughty destroyed evidence on his computer, the court finds Dallas's second argument – that Doughty destroyed or disposed of his cellphone while on notice litigation was pending and on notice his cellphone might be relevant to the pending litigation – persuasive. Doughty acknowledges he upgraded cellphones in June 2015, after he was named in the present lawsuit. Upon upgrading, Doughty disposed of his old cellphone, which contained peer-to-peer file-sharing software called uTorrent. Consequently, Dallas argues, "evidence in this action is that [Doughty] destroyed or disposed of, at least one device, a cell phone, which had BitTorrent software installed," while on notice of the pending litigation against him. (Resp., at 13.) Doughty concedes he "was on notice of this lawsuit and the duty to preserve was triggered," but argues Dallas had not produced discovery requests for

the cellphone and, thus, it was "reasonable to assume only the laptop was subject to litigation hold." (Reply, at 5.) But the "obligation to preserve relevant evidence exists whether or not the evidence has been specifically requested in a demand for discovery." *Scalera*, 262 F.R.D. at 171. And Doughty should have known his cellphone, which contained peer-to-peer file-sharing software of the type at issue in the case, "might be useful to [his] adversary." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) (stating "anyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary"). Hence, Doughty had a duty to preserve the evidence contained on his cellphone.

Because it has persuasively shown Doughty disposed of relevant evidence while the duty to preserve evidence was triggered, Dallas argues summary judgment is "clearly improper," as a reasonable jury could find for Dallas based on Doughty's false statements and spoliation of evidence. (Resp., at 13-14.) Doughty's assertion that he did he did not know about BitTorrent is indeed contradicted by the fact that uTorrent, a BitTorrent client, was installed on Doughty's previous cellphone. The clear discrepancy in Doughty's testimony certainly puts Doughty's credibility at issue, and a reasonable jury could, therefore, be skeptical of, and disbelieve, Doughty's testimony that he never used peer-to-peer filing-sharing technology and, specifically, never used such technology to illegally download *Dallas Buyers Club*. To get past summary judgment, however, Dallas may not rely solely upon the mere assertion that Doughty's testimony is untrustworthy and should be disbelieved. Consequently, Doughty's credibility, by itself, is insufficient to raise a genuine issue of material fact.

While Doughty's credibility does not, by itself, create a disputable fact, his credibility, combined with evidence of spoliation, raise a genuine issue of material fact. As discussed, Doughty was aware of the current litigation and should have known that his cellphone, which

contained peer-to-peer file-sharing technology of the kind potentially used to download *Dallas Buyers Club*, might be relevant. This evidence, when viewed in the light most favorable to Dallas, is sufficient to show spoliation, which, in turn, raises a presumption that the evidence goes to the merits of the case and is adverse to Doughty. *See Apple Inc.*, 888 F. Supp. 2d at 993 ("In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it"). This presumption, as well as Doughty's contradicted testimony, would allow a reasonable jury to conclude: (1) Doughty's cellphone contained adverse evidence of direct copyright infringement, and (2) Doughty's testimony that he did not directly infringed Dallas's copyright should be disbelieved. Of course, a jury could reach the opposite conclusion. It might believe Doughty's testimony that he never used peer-to-peer filing-sharing technology, that he had no reason to pirate *Dallas Buyers Club* because he could view it legally through his HBO Go account, and that such testimony outweighs the largely circumstantial evidence Dallas possesses. But such credibility determinations and evidence-weighing is precisely the jury's, and not the court's, domain. Consequently, summary judgment on Dallas's first claim is denied.

II. Dallas's Second Claim – Contributory Infringement

In its second claim, Dallas alleges Doughty contributorily infringed Dallas's copyright by "facilitate[ing] and promot[ing] the use of the Internet" to allow the infringement of *Dallas Buyers Club* by third parties. (First Am. Compl. ¶ 40.) Dallas maintains Doughty did so with notice, willfully, intentionally, in disregard of, and with indifference to, Dallas's rights. Doughty moves for summary judgment, arguing Dallas has failed to provide evidence showing Doughty encouraged others to infringe Dallas's exclusive rights. Specifically, Doughty argues, the Copyright Act does not create secondary liability for a private Internet subscriber who simply

shares access with others and who fails to prevent infringement by others using the subscriber's Internet service. For the reasons stated below, Doughty is correct and his motion is granted with respect to Dallas's second claim.

Although "[t]he Copyright Act does not expressly render anyone liable for [another's] infringement," *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434 (1984), the Supreme Court has recognized two types of secondary infringement: contributory and vicarious infringement. An individual "'who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of *another* may be liable as a "contributory" [copyright] infringer.'" *Ellison*, 357 F.3d at 1076 (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)) (italics in original). The knowledge requirement for contributory infringement includes those with actual knowledge and those with "*reason to know* of direct infringement." *Id.* (italics in original).

Mere knowledge of actual infringement or the potential to infringe is not enough to subject a defendant to liability; rather, the plaintiff must show the defendant actively encouraged third parties to infringe through specific acts. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 916, 936, 942 (2005). In *Grokster*, the Supreme Court directly addressed the question of contributory infringement. There, petitioners, a group of copyright holders, alleged respondents, servicers of free software products allowing users to share electronic files through peer-to-peer services, "knowingly and intentionally distributed their software to enable users to reproduce and distribute the copyrighted works in violation of the Copyright Act." *Id.* at 922. The Court determined the respondents contributorily infringed petitioners' copyrights because the respondents had "intentionally induc[ed] or encourage[d] direct infringement." *Id.* at 929. The Court further stated, the respondents were liable for contributory infringement because they

"acted with a purpose to cause copyright violations," by, among other things, providing software suitable for illegal use, failing to develop filtering tools to diminish infringing activity, and profiting from such activity. *Id.* at 938-40.

In so holding, the Court adopted the rule "that one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *Id.* at 936. However, the "mere knowledge of infringing potential or of actual infringing uses," the Court stated, "would not be enough . . . to subject a distributor to liability." *Id.* Moreover, the Court stated, contributory liability does not arise "merely based on a failure to take affirmative steps to prevent infringement, if the device was capable of other substantial noninfringing uses." *Id.* at 939 n.12. Instead, contributory infringement only arises by "actively encouraging . . . infringement through specific acts." *Id.* at 942. In short, liability is premised on "purposeful, culpable" conduct. *Id.*

Doughty did not promote the use of his Internet service to infringe Dallas's copyright and is therefore not liable for contributory infringement. Unlike the petitioners in *Grokster*, who provided evidence the respondents intentionally induced and encouraged direct infringement, as shown by clear and affirmative steps taken to foster copyright infringement, Dallas provides no such evidence. Dallas's only two pieces of evidence are: (1) that Doughty knew or had reason to know of the infringing activity because he received multiple Comcast e-mails notifying him his IP address had been identified with infringing activity, and (2) that Doughty failed to take affirmative steps to prevent copyright infringement once Doughty had become aware of potential infringement. As the Court in *Gokster* stated, however, contributory liability arises when the defendant actively encourages infringement, not by mere knowledge of infringing activity and

failure to take affirmative steps to prevent infringement. This is especially true here given the Internet is capable of substantial noninfringing uses. Consequently, Dallas's theory of contributory infringement is precluded by the Supreme Court's holding in *Grokster*.

This reasoning is strengthened by the rejection of Dallas's theory of liability by other courts in the Ninth Circuit. *See Elf-Man, LLC v. Brown*, 996 F. Supp. 2d 1056, 1059 (E.D. Wash. 2014) (holding that "*Grokster* effectively forecloses any argument that private consumers have an affirmative obligation to prevent others from using their internet access for illegal copyright infringement"); *see also Elf-Man, LLC v. Cariveau*, No. C13-0507-RSL, 2014 WL 202096, at *3 (W.D. Wash. Jan. 17, 2014) (granting motion to dismiss claim that defendants were liable because they failed to secure, police, and protect use of their Internet service against copyright infringement). Because the evidence shows Doughty did not actively encourage the use of his Internet service to infringe Dallas's copyright, no reasonable factfinder could conclude he contributorily infringed Dallas's copyright. Summary judgment on Dallas's second claim is granted.

## III. Dallas's Third Claim – Vicarious Infringement

In its third claim, Dallas alleges Doughty is liable for vicarious copyright infringement because Doughty supervised the infringing activity by allowing others, namely his roommates and party guests, to use his Internet service and infringe Dallas's copyright. Dallas maintains Doughty did so with a direct financial interest. Simply put, Dallas argues that Doughty, as the Internet service account holder "had sole and exclusive control over the use of the Internet service at issue" and allowed others – his roommates and guests – to use the Internet while collecting money from his roommates in return. (Resp., at 8-9.) Doughty moves for summary judgment, arguing a "correlation between a shared utility bill and the infringement that resulted"

fails to show Doughty derived a financial benefit from the infringement alleged to have taken place. (Mot., at 20.) For the reasons stated below, Doughty's motion is granted with respect to Dallas's third claim.

Vicarious copyright liability, an outgrowth of respondeat superior, extends "to cases in which a defendant 'has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.'" *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001) (internal citations omitted). In the context of vicarious copyright infringement, the ability to block an infringer's access to a particular venue or environment for any reason evidences the right and ability to supervise. *Id.* Additionally, a financial benefit exists where the availability of infringing material acts to draw customers to the defendant's venue or place of business. *Id.*

In *Napster*, record companies and music publishers brought a copyright infringement suit against the appellee, an Internet service facilitating "the transmission and retention of MP3 files between and among its users." *Id.* at 1010-11. The appellants' complaint alleged, among other things, the appellee was vicariously liable for copyright infringement and sought a preliminary injunction. *Id.* at 1010. The Ninth Circuit agreed and held the appellants "demonstrated a likelihood of success on the merits of the vicarious copyright infringement claim." *Id.* at 1024.

Addressing the first prong of vicarious copyright infringement – ability to supervise – the court explained that the appellee retained "the right to control access to its system" and expressly stated to its users it had the right to refuse service and terminate anyone's account if the appellee believed its users violated applicable law; however, it failed to exercise this control to the fullest extent. *Id.* at 1023. The court explained that an ability to control access for any reason evidences the right and ability to supervise, and to "escape imposition of vicarious liability," the

appellee must have exercised that right to the fullest extent, which the appellee did not. *Id.* Consequently, the appellant showed that the appellee "had the right and ability to police its system and failed to exercise that right to prevent the exchange of copyrighted material." *Id.*

With regard to the second prong of vicarious copyright infringement – financial interest – the court explained that the appellant provided "ample evidence" the appellee "has a direct financial interest in the infringing activity" because the infringing activity acted "as a draw" for customers, thereby increasing the appellee's userbase. *Id.* Thus, the court stated, the appellant met the second prong of the test because it sufficiently showed the appellee received financial benefits from the availability of infringing activity among its users. *Id.* Thus, the appellant adequately demonstrated the appellee was liable for vicarious copyright infringement, warranting an injunction. *Id.* at 1024.

By contrast, when the plaintiff provides no evidence customers used the defendant's service because of available infringing material, no causal relationship exists between the defendant's financial incentives and the infringing activity taking place through its service. *Ellison v. Robertson*, 357 F.3d at 1079. In *Ellison*, the appellant, a copyright holder of numerous science fiction novels, brought suit against the appellee, alleging the appellee provided its subscribers with unlicensed access to her copyrighted work. *Id.* at 1074-75. The appellant maintained the appellee was vicariously liable because appellee derived a direct financial benefit from the infringement and had the right and the ability to supervise the infringing activity. *Id.* at 1078. The appellee conceded it had the right and ability to supervise the infringing activity but argued it did not derive a direct financial benefit from the infringement. *Id.*

In support of her argument that the appellee derived a direct financial benefit from the copyright infringement, the appellant noted that, like in *Napster*, the appellee's future revenue

directly depended upon increases in userbase and providing access to the appellant's work acted as a draw to customers. *Id.* at 1079. Second, the appellant argued that the subscribers "inquired about [appellee] blocking access to the" copyrighted work, apparently showing the importance its customers placed in accessing the copyrighted material. *Id.* As the Ninth Circuit stated, however, "[t]his evidence [was] hardly compelling." *Id.* The court noted there was no evidence the appellee "attracted or retained subscriptions because of the infringement or lost subscriptions because" the appellee eventually obstructed the infringement. *Id.* Thus, while a causal relationship might have existed between the infringing activity and appellee's profits, the evidence offered was not enough to make out a claim for vicarious copyright infringement. *Id.*

While Doughty arguably had the ability to supervise the alleged infringing activity, Doughty did not have a direct financial interest in the alleged infringing activity and is thus not liable for vicarious copyright infringement. First, Doughty, as the Internet service account holder, appears to have had exclusive control over use of the Internet service at issue in this case. Because the record indicates other housemates, as well as guests, accessed the Internet wirelessly, Doughty could simply have secured access to the Internet by creating a password or by changing an already existing password. Thus, much like the *Napster* appellee, Doughty had the capacity to terminate use of his Internet service by any infringing third party if he believed it was being used to violate applicable law. Consequently, Doughty had the ability to supervise the alleged infringing activity.

Nonetheless, Dallas cannot establish a question of fact for vicarious copyright infringement because it has provided no evidence Doughty had a direct financial interest in the alleged infringing activity. In an attempt to show Doughty had a financial interest, Dallas argues Doughty collected money from his roommates and in return allowed them to use the Internet.

This argument is insufficient.  As in *Ellison*, there is no evidence Doughty's roommates were attracted to, or agreed to help pay for, the monthly Internet bill because doing so provided the opportunity to pirate copyrighted material.  Dallas's attempt to liken a shared Internet bill to a scenario in which an individual or entity knowingly received financial benefits in exchange for the availability of infringing activity would be an unwarranted extension of the Copyright Act. Consequently, Dallas has failed to show a causal relationship between the infringing activity and the money Doughty received from his roommates in exchange for Internet usage, and Doughty's summary judgment motion is granted with respect to Dallas's claim for vicarious copyright infringement.

*Conclusion*

Doughty's Motion for Summary Judgment (ECF No. 31) is DENIED with regard to Dallas's first claim for direct copyright infringement and GRANTED with regard to Dallas's second and third claims for contributory and vicarious copyright infringement.

IT IS SO ORDERED.

DATED this 27th day of April, 2016.

JOHN V. ACOSTA
United States Magistrate Judge